UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN N., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 5:18-cv-01935-KES <br><br> MEMORANDUM OPINION AND ORDER |

# I.

# BACKGROUND

Plaintiff John N. ("Plaintiff") applied for Social Security Disability Insurance Benefits ("DIB") in October 2014 alleging disability beginning on June 29, 2014. Administrative Record ("AR") 159; AR 308 (he received unemployment benefits until December 2015). Plaintiff worked for nineteen years as the manger of the food and beverage department of the Menifee Lakes Country Club. AR 43-44, 149, 171-72. In 1998, an industrial accident damaged his hearing; a "large piece of cooking equipment exploded" close to him. AR 42, 212, 274. He has

---

[1] Effective November 17, 2017, Ms. Berryhill's title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

used hearing aids since 1999. AR 189. In 2001, he received a workers' compensation settlement. AR 42, 149, 212. He continued to work until 2014 when his employer outsourced his department. AR 43, 285. His job involved managing the department, supervising staff, and ordering food products. AR 180. His employer accommodated his hearing loss by letting other employees represent him at meetings or assist with tasks like recruiting interviews. AR 182.

On August 8, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 34-50. On October 27, 2017, the ALJ issued an unfavorable decision. AR 15-31. The ALJ found that Plaintiff suffered from severe medically determinable impairments ("MDIs") including heart disease, right shoulder disorder, and "bilateral hearing loss with tinnitus." AR 17. The ALJ found Plaintiff suffered from several non-severe mental MDIs: major depressive disorder, anxiety, and post-traumatic stress disorder. AR 18. Despite these impairments, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with some additional non-exertional restrictions, including a restriction against "moderate exposure to noise." AR 21.

Based on the RFC analysis and the VE's testimony, the ALJ found that Plaintiff could still do his past relevant work as a food and beverage director, Dictionary of Occupational Titles ("DOT") 187.167-210, and chef, DOT 313.131-014. AR 26. The ALJ concluded that Plaintiff was not disabled. Id.

## II.
## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant

evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## III.
## ISSUES PRESENTED

Issue One: Whether the ALJ erred in finding that Plaintiff's mental impairments were non-severe.

Issue Two: Whether the ALJ erred in determining Plaintiff's RFC by not including additional limitations to accommodate Plaintiff's hearing loss.

(Dkt. 21, Joint Stipulation ["JS"] at 2.)

## IV.
## DISCUSSION

A. **ISSUE ONE: Plaintiff's Mental Impairments.**

**1. The Special Technique for Evaluating Mental Impairments.**

To determine the severity of mental MDIs at step two in the sequential evaluation process, the ALJ must consider how well the claimant functions in four areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). A claimant with only "none" or "mild" limitations in these areas does not have a severe mental impairment. 20 C.F.R. § 404.1520a(d)(1).

The regulations require that ALJs document their application of this special technique in certain ways. 20 C.F.R. § 404.1520a(e). Specifically, "the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(e)(4).

**2. Summary of the ALJ's Relevant Findings.**

The ALJ applied the special technique, finding that Plaintiff has (1) "no limitation" understanding, remembering, or applying information, (2) "mild limitation" interacting with others, (3) "mild limitation" maintaining concentration, persistence, or pace, and (4) "mild limitation" adapting or managing himself. AR 19-20. In support of these findings, the ALJ cited Plaintiff's activities and the lack of "significant positive findings" of deficits in these areas. Id. The ALJ discussed Plaintiff's household management activities (e.g., preparing meals, cleaning, running errands, using a computer). AR 22-23. The ALJ also discussed multiple mental status examinations finding that Plaintiff had normal thought content, memory, and intelligence, and he interacted appropriately with the examiner. AR 18-19, citing AR 310, 383, 408; compare AR 56, 70 (state agency consultants found Plaintiff's mental impairments non-severe).

**3. Analysis of Claimed Error.**

Plaintiff argues that despite taking psychotropic medications, he continued to experience symptoms such as panic attacks and "difficulty being around other people" that would more than minimally affect his ability to do basic work activities. (JS at 3-4.) He argues that had the ALJ limited him to "unskilled work," he would have been found disabled under the guidelines. (JS at 4.)

4

Plaintiff does not discuss the special technique or present any arguments as to why the ALJ's findings of "no" or "mild" limitations in the four relevant functional areas are not supported by substantial evidence.

The Court's review of the AR reveals substantial evidence to support each finding. Regarding understanding, remembering, or applying information, Plaintiff is able to do complex activities such as going out alone, driving, handling money, shopping, using a computer, and using a smart phone to text. AR 35, 40, 186, 197, 212. He prepares meals everyday for himself and his spouse and is a good cook. AR 196, 198. Neither he nor his spouse reported that he suffers from memory problems. AR 188, 199. At medical evaluations, he scored well on cognitive function tests. AR 286-87. He remembered dates relevant to his medical history, displayed average intelligence, and was assessed as capable of doing complex tasks. AR 277, 286, 288.

Both Plaintiff and his spouse linked his difficulty with understanding to his difficulty with hearing, i.e., an input problem rather than a processing problem. AR 199 (Plaintiff has difficulty understanding because he "misunderstands a lot of words"); AR 183 (Plaintiff has difficulty following verbal instructions because he cannot hear them well). This does not demonstrate any limitation on Plaintiff's cognitive abilities.

Regarding maintaining concentration, persistence, or pace, Plaintiff does not need reminders to maintain his daily schedule and completes household chores without extra encouragement. AR 185-186. He attributed difficulty concentrating and anxiety to his hearing loss. AR 190 (he cannot concentrate because he is always looking around to see what is happening); AR 183 (he has anxiety because he cannot hear what is going on around him). Plaintiff was, however, able to work with hearing loss (and these related mental symptoms) for years, albeit with accommodations. The evidence does not show that Plaintiff has more than a "mild" limitation in this area.

Regarding getting along with others, Plaintiff lives with a spouse with whom he has enjoyed a long relationship. AR 193, 285. He cooks all their meals; they often eat together and sometimes go to movies. AR 187, 196. His spouse did not assess Plaintiff as having difficulty getting along with others. AR 199. Plaintiff reported he got along "OK" with authority figures, but he worried how they would react if he took too long to respond because he did not hear them. AR 189. Plaintiff could go out in public for shopping, errands, and movies. AR 185-87. He also went to the gym, although he tried to avoid "crowds" there. AR 314, 356, 383.

Plaintiff told doctors that he "tries to stay away from people because he cannot hear well" and he is "anxious" when people try to talk to him. AR 383. In 2015, however, he told a psychiatric examiner that he received some counselling after his industrial accident and medication that made him sleepy, so he stopped taking the medication after one month and had not received any psychiatric treatment since. AR 285. He was assessed as "mildly anxious," consistent with the ALJ's finding of mild limitation in this area. AR 286.

Regarding self-management, Plaintiff reported no difficulty with personal care. AR 184, 195. He had an unremarkable appearance at medical appointments. AR 276, 286, 309. Nothing in his medical records suggests that he was unable to interact appropriately and independently with the providers.

In sum, substantial evidence supports the ALJ's findings in support of the conclusion that Plaintiff's mental impairments were non-severe. Plaintiff has not shown that he is only capable of unskilled work.

B. **ISSUE TWO: The RFC's Treatment of Plaintiff's Hearing Loss.**

    **1. Summary of Relevant Medical Evidence.**

At a February 2015 internal medicine evaluation, Dr. To assessed, "Hearing appears to be adequate." AR 276. Plaintiff "did not display any major hearing loss. He was able to communicate without signs of cupping his ears or lip

reading." AR 277.

At a March 2015 psychiatric evaluation, Dr. Nadella noted that Plaintiff reported "depression because of my hearing loss." AR 284. Plaintiff told her that he was deaf in his left ear but could hear some with his right ear and a hearing aid. AR 285. She observed that when he talked, he "emphasizes on his right ear and he tries to do lip reading." AR 286. Dr. Nadella communicated well enough with Plaintiff to complete her examination, including taking a patient history and administering various tests involving spoken instructions and answers. AR 285-87. She noted that Plaintiff was able to work at the country club despite his hearing loss with "some changes in his behavior." AR 287.

A June 2013 hearing test showed a speech threshold for the right ear of 70 and for the left ear of 100+. AR 305. A similar test in June 2015 showed a speech threshold for the right ear of 75; the left ear was not tested. AR 214, 306.

State agency consultant Dr. Dwyer opined that Plaintiff had no communicative limitations but should "avoid even moderate exposure to noise" in his working environment. AR 59 ("Plaintiff should avoid noise to protect hearing."). On reconsideration, Dr. Chan offered the same opinions. AR 71-72.

### 2. Summary of the ALJ's Relevant Findings.

The ALJ summarized the medical evidence (AR 24) and found that Plaintiff suffers from "bilateral hearing loss with tinnitus." AR 17. The ALJ gave "little weight" to the state agency consultants' opinions for overstating Plaintiff's exertional abilities and inadequately considering "limitations arising from [his] hearing impairment." AR 25. Nevertheless, the ALJ adopted as part of the RFC that Plaintiff "avoid any moderate exposure to noise" at his workplace. AR 21.

At the hearing, the ALJ asked the VE whether persons who needed to "avoid any moderate exposure to noise" could do Plaintiff's past relevant work as a food and beverage director or chef. AR 48-49. The VE responded that they could. AR 49. The ALJ instructed the VE to state if any of his testimony was inconsistent

7

with the DOT. AR 48. The VE did not identify any inconsistencies. AR 48-49. Plaintiff's counsel did not ask any questions. AR 49.

The Selected Characteristics of Occupations Defined in the Revised DOT classifies occupational noise intensity of jobs using a five-level scale, as follows:

| Code | Level | Illustrative Examples |
|---|---|---|
| 1 | Very Quiet | Isolation booth for hearing test; deep sea diving; forest trail |
| 2 | Quiet | Library; many private offices; funeral reception; golf course; art museum |
| 3 | Moderate | Business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours |
| 4 | Loud | Can manufacturing department; large earth-moving equipment; heavy traffic |
| 5 | Very Loud | Rock concert – front row; jack-hammer in operation; rocket engine testing area during test |

The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D (1993). The DOT rates both of Plaintiff's past jobs as involving level 3 ("moderate") noise exposure. See DOT 187.167-210 (food and beverage director), DOT 313.131-014 (chef).

**3. Analysis of Claimed Error.**

Plaintiff contends that "the ALJ's RFC assessment fails to properly account for and incorporate limitations related to Plaintiff's bilateral hearing loss." (JS at 11.) Plaintiff discusses the DOT's language development rating for his past relevant work, arguing that Plaintiff's hearing loss would interfere with required communication skills. (JS at 14.) Plaintiff asserts that the ALJ's failure to include

"communicative limitations" in Plaintiff's RFC causes the RFC to lack substantial evidentiary support. (JS at 15.) Defendant focuses on the medical evidence (which, per Defendant, shows adequate verbal communications and endorses no specified communicative limits) and evidence that Plaintiff did his past work for many years with hearing loss. (JS at 16-17.)

Neither party mentions the DOT's noise exposure ratings and the apparent inconsistency between the DOT and the VE's testimony.[2] Without any explanation of this inconsistency, this Court cannot find substantial evidentiary support for the ALJ's step four finding that Plaintiff could work as a chef or food and beverage director (jobs which, per the DOT, require exposure to "moderate" noise) when his RFC restricts him against "any moderate exposure to noise." AR 21.

///
///
///
///
///
///
///
///
///

---

[2] The Court has the authority to sua sponte identify errors in the ALJ's decision and remand the matter pursuant to sentence four of 42 U.S.C. § 405(g). See Farley v. Colvin, 231 F. Supp. 3d 335, 339 (N.D. Cal. 2017) (explaining that a "appeals from a denial of Social Security benefits differ from ordinary civil litigation [because the] underlying claims process is nonadversarial" and concluding that "there is no reason to treat the failure to raise an error as reason for actively ignoring it"); Murray v. Schweiker, 555 F. Supp. 573, 576 (D. Mont. 1982) (explaining that a reviewing court may sua sponte remand a disability case to the Commissioner); Barbera v. Acting Comm'r of Soc. Sec. Admin., 2018 WL 6258676, at *4 n.5 (D. Ariz. Nov. 30, 2018).

# V.
# CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered REVERSING the decision of the Commissioner and REMANDING this case for further administrative proceedings consistent with this opinion.

DATED: April 25, 2019

_____
KAREN E. SCOTT
United States Magistrate Judge